Case 16-7033, et al. Yorie Von Kahl v. Bureau of National Affairs, Inc. Appellant Ms. Handeman for the appellant. Mr. Dubinsky for the athlete. Good morning. Good morning, Your Honors. Laura Handeman, Davis-Wright for Maine. Representing the appellant, Cross Appellee, Bureau of National Affairs, the publisher of the Criminal Law Reporter. We are here on an interlocutory appeal, certified by the district court, who recognized that there could be differing opinions on whether Mr. Kahl had presented sufficient affirmative evidence that would allow a reasonable jury to conclude, by the heightened standard of clear and convincing evidence, that BNA published its two-paragraph summary of plaintiff's petition for mandamus with knowledge of falsity, or that they in fact entertained serious doubts as to the truth, and allow a jury to similarly find with respect to the clarification published two years later. We submit the requisites showing has not been made and summary judgment should be granted. After a full opportunity for discovery and allowing every inference in favor of Mr. Kahl, the record is devoid of clear and convincing evidence, indeed any evidence, that this was anything other than an honest misinterpretation of the excerpts contained in the appendix, which this court said in Jankovich does not amount to actual malice, even if the publisher was negligent in failing to read the document carefully. Conceding that good faith mistake cannot be a basis for actual malice, amicus in support of Kahl insists that because actual malice turns on a subjective state of mind, it should be a jury question. But that would undercut the very purpose of this daunting actual malice standard. Supreme Court, once upon a time, said something to that effect, though. Hutchison v. Proxmire. In dictum, I believe it was, in a footnote. I follow their dictum. But to some extent, one would say that the Anderson court, in insisting that the plaintiff has the burden, in order to defeat summary judgment, of coming forward with affirmative evidence of clear and convincing evidence, that suggested that the summary judgment standard was very much alive, and I believe in Jankovich the reference was made that even when there is a subjective state of mind and with that difficult burden, typically summary judgment is hard to overcome. I believe the McFarland case said very few public figures are ever successful in prevailing on this very difficult standard, and it's difficult by a design because of the chilling effect that going to trial would impose on news organizations. That was referenced as recently as in the FARA case by Your Honor, Judge Rogers. And that may be why there, as far as we know, there have been no trials in this circuit against a media defendant on actual malice since the Tavela-Reyes case in the 80s. The evidence of actual malice in this case is nothing more than the mistake itself, what the district court called, referred to as the discrepancies between the petition and the summary. But falsity does not equal actual malice. There is simply no affirmative evidence that contradicts the unimpeached testimony of the author and editor that the mistake was inadvertent, a result of the way the excerpts in the appendix were formatted with only the judge's name and no other speaker identified in a section of the appendix where the judge is clearly pronouncing sentence, and therefore they believe that everything that was contained in that section after the caption was the judge's sentence. And that's different from language in an earlier section of the appendix, which Amicus refers to in his reply, where the language is, and the judge will so instruct, clearly a lawyer speaking, not the judge. So they thought everything in that section where the judge is pronouncing sentence was the judge speaking. Now, B&A did it. So I understand Apolli's position, given that the plaintiff gets the benefit of all inferences, et cetera, the clarification compounded the error as opposed to mitigated the error, so that even if the original publication was a mistake, an honest mistake, having been alerted to the mistake, the clarification didn't do at least what the plaintiff thinks should have been done. But the argument is not that you had to do an exhaustive search, but that the clarification just failed to mitigate the error. What's your response on that aspect? Because I realize the district court certified this before Yankovic, but as you point out, there haven't been any trials in this circuit since our in-bank decision, and the decisions before the district court certification, like McFarland, like Lorenz, were pretty clear, and yet the district court here thought that there was a serious question, and I'm trying to read between the lines and understand why, and what I said in the premise of my question is the best I've come up with. Well, on the — I think the law has been clear on mistake, even before the Yankovic decision, taking the timing, v. Pape, which was a similar situation. No, but if that were so, then the district court would have granted you summary judgment. The district court didn't. Well, we believe the district court should have. I understand, but I'm just trying to get you to respond to Appellant's, or Athalee's, argument, that given that he's entitled to all the burdens, the inferences from the evidence, the fact that the defendant's statements are undisputed is basically irrelevant, he says. Of course, that's what the defendants are going to say. But here you look at the clarification, and you can see why, arguably, a plaintiff might see that it made things no better and, in the plaintiff's view, worse. Well, I would like to address that, Your Honor, because the clarification was prompted two years later by a letter by Mr. Von Kahl's own lawyer, the lawyer who put together the petition. In his letter, he made no reference to the page in the petition that indicated that it was the AUSA who was speaking. That is probably because at that page, it wasn't speaking, the AUSA wasn't speaking the language in suit but speaking about the verdict of murder. He made no reference to the fact that the ruling was inaccurate because the AUSA was speaking that language and that that wasn't the judge. What he said was Mr. Von Kahl did not say that there was a justification for murder, based on philosophical and religious grounds. And that error was indeed corrected by the clarification. So it really wouldn't have mattered if the clarification had said, the court reporter said this. That would have been fine? Well, I mean, what it said and what is accurate is it said, petitioner who was said to have believed that the murders were justified. It was indeed said at the hearing, at the sentencing hearing, not by Mr. Von Kahl. And that, we believe, the clarification makes clear. It wasn't the judge saying the petitioner lacked contrition or believed the murders were justified. We think the clarification doesn't compound the error. It is true the judge did not make specific reference to that language that the AUSA had said. But, in fact, the Von Kahl's counsel never said the judge never made reference to that language. That was not the focus of his. There's a big difference between the judge saying it and the prosecutor saying it. And we believe we make that clear because we say, petitioner who was said to have believed. So, clearly, that's not the, if that's the judge writing petitioner who was said to have believed, he's describing what happened at the sentencing hearing. Somebody spoke. Now, it doesn't identify the AUSA specifically, but it's clearly not the judge. It's clearly not Mr. Von Kahl when that clarification is put in. And, in fact, and as I said, we weren't on notice because counsel didn't even say it. And we surely should be relying on Mr. Von Kahl's counsel, the person who created the petition themselves and created this confusing appendix. The fact is the judge himself said much the same thing. He imposed, he rejected Von Kahl's lawyer's request for just 15 years and imposed two concurrent life sentences plus 15 years. And in a portion of the transcript that neither Mr. Von Kahl or his lawyer saw fit to put in the appendix, he cites, the judge cites as aggravating factors, Kahl's lack of sympathy for the victims of the families, and says he was seeking to protect his father from what? From an arrest for a minor violation, and for that, Yori Kahl was willing to kill? So the judge's tone was markedly similar to the prosecutor's. We wouldn't be on notice that this was not the judge speaking. It was consistent with the sentence that the judge imposed. And as it turns out, it was consistent with what the judge himself said. Isn't actual malice often going to require an assessment of the reporter's credibility? To some extent, but all the cases and their allegiance where grand jury, where summary judgment has been granted, all obviously involve a subjective state of mind. And as the Keough court said, yes, that's often the case, but not always, particularly where recklessness is based on objective evidence. And it's the defendant, the plaintiff's burden to come forward under Anderson was at least circumstantial evidence that would suggest that this wasn't just a mistake. And here, we're talking. Because you said there's been no trial since Cavalleros. Against the media in actual malice in this circuit. Right. And Judge Ruth Ginsburg wrote a concurrence in that case, laying out how juries should assess this thing because she said, despite our decision today, therefore, hotly contested cases of this genre are likely to reach juries again. That was a mistaken prediction, I gather. Well, as the law has evolved, yes, it is. But isn't that, in part, her recognition in the courts that to figure out the credibility of the reporter, it's hard to do that without hearing the reporter's explanation and making an assessment. I realize, by the way, the balance on the other side, why summary judgment's important, but I'm just poking at, I think it's hard to clear this hurdle if you're a plaintiff because it's going to be near impossible to prove that the reporter's, in essence, lying about his or her motives. Well, I mean, this court has – Or it doesn't have to be a reporter, whoever's the defendant. First of all, I did read Justice Ginsburg's, then-Judge Ginsburg's concurrence in that and found that it was actually trying to say that the language of reckless disregard is somewhat of a misnomer and that juries can be led astray and courts should be sure to make clear what exactly is involved. I also want to point out that this case, unlike many of the others, that might pose more difficult case where it's an investigative report and you have maybe, as in Taplerea's say, a reporter who's pushing a certain narrative or a newspaper who's trying to get a more eye-catching headline. This is the dry-as-dust, as you might say, summary of what is filed in the Supreme Court. There were 18 other such summaries. It was two paragraphs long in total. It's not meant to be an investigative study of the case. It's not meant to look at the full judicial record of the case. And a mistake was made. There's no doubt about it. We tried. I mean, what's kind of ironic is if we're punished for the clarification, which was an effort to correct the mistake that Mr. von Kahl's lawyer brought to our attention, it could have the effect of discouraging others from taking corrective action, which I don't think is what would serve our readers well or the court. But remember, the only certified question that the district court expressly stated had to do with what I would describe as a sufficiency of evidence question. So we never get to whether, quote, your client is punished, unquote. All right? It's just was there enough here to get beyond summary judgment. Well, I think there's been a recognition that going to trial is itself a chilling effect. That's what the actual malice standard is designed to advert. Would Your Honors like me to address the public figure issue? That we believe is appropriately raised in this appeal. We think it's not really a close question. We think if you apply the wall-bound factors, there really was clearly a preexisting controversy that was defined, whether you define it narrowly as the shootout that resulted in two U.S. Marshals dead, or more broadly the motivations of Yuri von Kahl and his father and the debate over the role of the federal government and the duty to pay taxes, which is a subject that has been debated since the founding of the republic and debated even today. And these motivations were front and center. They were put in the excerpt of the appendix to the Supreme Court and had gained a lot of news attention at the time. And here a second factor, Mr. von Kahl's role in the controversy was far from passive or tangential. As the district court observed, the shootout was a newsworthy event in which he played a pivotal role. Now, whether he was the first shooter or not, he was convicted of second-degree murder, and he chose to weigh into the controversy. So you're not arguing that notoriety is sufficient? No. In this case, he specifically over these decades has weighed in in numerous publications to point out to a 1993 interview for a documentary, Death and Taxes, in which he said that the two Marshals needed to be shot, that if he had to do it over he would have done the same thing I did, and that the incident stemmed from our political and religious ideology. And he published a work for sale, still available on Amazon, in 2004, the year before the publication ensued, a writ of habeas corpus documenting the cause of the federal assault on Gordon Kahl at Medina, North Dakota. So this is someone who definitely is trying to influence the discussion both on the anti-government issues and on his own case. And the statement, thirdly, is totally germane. His participation in the controversy involving his ideological motivations is exactly the language in suit, and, of course, is part of the sentence that he was seeking relief in the petition. So we don't believe that it's necessary to remand to the district court, which had in front of it much of the publicity that your honors have in the record, when the court decided that he was a limited-purpose public figure. And one last thing. In the cross-appeal, Mr. Kahl has argued that the district court erred in rejecting his motion, that the statement about his conviction was libel, per se. We don't think that's properly part of this inquiry into actual malice. But if it is, we think the district court did not err in saying that, well, he had been sentenced under the pertinent statutes for second-degree murder, and so there's no falsity. All right. I'll give you a few minutes in rebuttal. Thank you. Good morning. Good morning, and may it please the Court. Greg Dubinsky, appointed amicus curiae, presenting arguments in favor of Mr. Kahl. I'd like to start with Judge Rogers' line of questioning with regard to the difference between the first article and the second article, the clarification. The first article said that the ruling below by the sentencing judge was that Petitioner showed no hint of contrition and made statements to the press that he believed the murders were justified. The clarification says that the summary of the sentencing judge's ruling below should have said Petitioner, who is said to have shown no hint of contrition. The passive voice does not correct the original defamation, as the district court below found, because both articles attribute the statement that Kahl showed no contrition and justified the murders to the sentencing judge rather than to the prosecutor who was the speaker of those statements. The Court should really focus its attention, in our opinion, on the moment that it decided the clarification was appropriate, because at that moment, by B&A's own admission, it conceded that the first article was defective and required a clarification. At that moment, B&A was required, under the precedent of this Court and the Supreme Court, to conduct a concession. Concession, not in the legal sense of the term, but rather an acknowledgment that the first article required a clarification because, to quote B&A's letter to Mr. Kahl, the letter could be confusing to the reader. So what B&A was required to do at that point, once it agreed that the first article did not accurately describe the sentencing hearing, was to conduct an investigation sufficient to prove that it had good faith. But the second, I mean, that just shows that they maybe screwed up the correction as well as the original article, but it still seems to be a high hurdle to get to actual malice. And the opinion, district court's opinion, seems to say that the discrepancies between what really happened and what the story said alone is enough to get you to a jury for actual malice, and that seems to be a leap and would get a lot more cases to juries in contravention of what the Supreme Court's music has been. So how do you respond to all that? We make the argument in our briefs, but we really think that the thing that's most convincing with respect to showing reckless disregard is the second article. That is, once B&A received the letter from Kahl's counsel saying the attribution, who said what, at the sentencing hearing was in question, it was incumbent on B&A to then conduct an investigation and look at it. Well, I was going to get to that. I mean, the question about when the obligation to conduct an investigation arises, where you're relying on the document that's submitted to you, which identifies the mistakes, so you go to the source document and look at it. So that's the investigation. I read your brief to say they had to go back and get the transcript of the trial and read it for themselves and all that sort of thing. Our position would be that B&A would have inerted itself to liability by obtaining the transcript, which B&A does not dispute would have been a low cost and easily. Well, that's your assessment. I mean, this is a publication that maybe that is a high cost for them. I mean, if they had to do that in every case, for example. Well, I think it is incumbent upon publications to get their stories accurate, and in doing so to conduct the requisite level of investigation to show good faith in assessing the veracity of their publications. It is correct that B&A's affidavits contain the self-interested testimony that they did go back and review the petition again. Again, the petition contains no contrary attribution of the statements at issue. And to the extent that B&A agreed that the first sentencing summary was not accurate, B&A could have easily obtained. You're saying easily obtained. B&A's publication was over 20 years after the trial, right? Right. And so you're saying that, as a factual matter, it's easy to get a 20-year-old transcript? Have you ever tried to do that? I have. We would submit that, with respect to obtaining the transcript, an alternative possibly would have been to ask Kyle's counsel for that transcript. Presumably he had access to it, having prepared the mandamus petition and appendix. The point here, I think, is not that B&A would know or didn't know how difficult it would be or how objectively difficult it is, in fact, but rather that B&A made no effort to obtain the transcript. It made no effort to conduct any further investigation once it was put on notice that its attribution was mistaken. So whether or not the transcript or some other means would have been the best way of showing good faith, B&A was required to do something to show that it had good faith. What aspect of the attribution was pointed out to B&A as having been a mistake? Kyle's counsel said to B&A that the attribution of the statements in the first article to Kyle was incorrect. That's not the basis of your client, but of Mr. Kyle's libel suit, right? That's correct, but we submit that's not dispositive because B&A was put on notice, and as Justice Scalia, when he was a judge on this court, wrote, a denial that provides specific and verifiable facts sufficient to cause any reasonable publisher to conduct further investigation would, in fact, trigger or at least could support a finding of actual malice. Here, although it's correct that Kyle's counsel did not say that the attribution to the sentencing judge was inaccurate, B&A was put on notice. The question of who said what at the sentencing hearing was challenged by the author of the petition who put together the appendix. But you don't need to investigate to correct the error that was pointed out. All you have to do is say, well, it said that it could be inferred that Carl said those things, and we're just going to fix it to say it was said about him. So you don't need to investigate to fix that, right? The problem with that interpretation is that the clarification was also inaccurate and inaccurate in a way that B&A could have. But you're not suing on the clarification. Yes. Mr. Carl's complaint does contain a count that's based on the clarification. Well, this point about the ñ well, I guess that's a different malice argument. But the malice argument about whether it's being attributed to the judge or the prosecutor, that's not at issue with that clarification, right? I believe it is, Your Honor. I think the argument is that by ñ and, in fact, Mr. Carl submitted a letter after the clarification saying explicitly that the attribution to the sentencing judge was inaccurate. It is true that the initial letter chose the wrong attribution, so to speak, but to side with B&A would be to say that a plaintiff would have to contest all defamatory implications of a potential attribution or other defamatory statement in order to put the publisher on subjective notice of the challenged falsity or veracity of the statements. No, but what I think we're trying to focus on is it's a clear and convincing evidence standard, and even without that, the actual malice standard is fairly high given Supreme Court decisions. And the fact that B&A might have offered a better correction is not enough. And this isn't a case where you offered any evidence, for instance, that they had it out for your client or they thought that anybody who challenges, you know, the duty to pay taxes is a traitor to the country and they were going to go after everybody. I mean, that's sort of the flavor of these actual malice situations. And here you have a publication and what did counsel say? Dry as dust sort of just repertorial summaries. And they made a mistake. And so they looked at the letter they got from the lawyer, which didn't tell them who said what, but simply said his client didn't make these statements. So the clarification says somebody said it. And the notion that they would have to do a major investigation when they're relying on the document that identifies the error, and they look at the document prepared by the plaintiff's attorney to correct the error, sort of a due diligence effort. And doesn't the plaintiff have a burden to come forth with something more on a clear and convincing, reckless? The Supreme Court has said that actual malice is a term of art and does not connote necessarily common law malice in the sense of spider or gill whale. But look at the cases. That's right.  I mean, take the case every day. For those of us who still read newspapers where, you know, on page A8 it says, we mistakenly said yesterday that somebody, you know, no longer worked for this, was unceremoniously discharged. And, you know, the argument is who reads page A8? The damage is done on page 1. Your standard, it seems to me, makes it virtually impossible to include that type of correction without also sort of hiring counsel and investigative counsel to do a thorough investigation. And, I mean, we've had situations where, too young to remember, but a secretary of labor was prosecuted, and then the jury acquitted him, and his statement was, how do I get my reputation back? Because the press had had this indictment all over the page in television, et cetera. So I think that while it may not be that there should never be trials, the burden is very heavy on the plaintiff. The burden is very heavy, but it is not a fatal in fact standard. I understand that, but, I mean, here, as I understand your argument, your best argument is, well, piggybacking on Judge Kavanaugh's question, you have to look at the credibility of the defendant. This is not even where you have an investigative reporter doing something, looking at your client, trying to figure out what's going on. It's looking at documents that are filed in the Supreme Court. And in the second statement makes it clear that it wasn't the judge. And so the question is, is that enough? At least the way the district court certified the question to us, is that enough, this so-called discrepancy, enough to get you past summary judgment? Again, we advance the argument about the discrepancy standing alone in our brief. We really think the court is best focused on the moment that B&A acknowledges clarification was needed. The reason for that, the reason why the effort normally of retraction does in fact counteract a finding of good, of actual malice, because it tends to counteract the initial defamatory statement. Here, as the district court found, the second article compounded the original defamation because it contained the exact attribution of the exact same statements to the sentencing judge rather than to the actual speaker, the prosecutor. I just want to be clear. I mean, the judge in her certification says in that parenthetical, and to compare those statements with the mandamus petition. So, as I understand it, that's part of the sufficiency question she certified to us. I agree, Your Honor. And we advance the argument in our briefs that there are textual indications that it was reckless for B&A to rely on, especially in light of a fairly impugnant background knowledge. For example, the rote identification of a judge in the caption of a transcript does not mean that every, as before the judge, does not mean that every statement that follows is made by the judge. The fact that B&A acknowledged that a clarification was needed, I think, is the moment in time that B&A's obligation to conduct further investigation, be it requesting the transcript from either the courthouse, which may have been difficult, but could also have been easily achieved through the means of a counselor who had access to it. If we ruled for you in this case, it seems like that would be ushering in a revolution in libel law because this case is sloppiness, arguably, mistakes, doubling down on the sloppiness with the correction that didn't do what it should have done. That happens all the time every day in reporting. And if all of that is now actionable by jury trial, given the history of the last 50 years since New York Times versus Sullivan, that seems a huge change. So why, if we rule for you in this case, is it not a revolution in changing the libel laws? Good faith mistakes remain protected by the First Amendment. The reason that this case would not usher in a new era of libel suits is because B&A acknowledged that a clarification was needed at that point. It had an obligation to conduct. So it's only, and I can see why you're doing this, cabining it, it's only because of the clarification, you think, that this case would not, the mistaken clarification, in other words, that this case would not revolutionize libel law. That's right. That's our position. And the reason why that's important is because this court has a precedence in which it said that. There are a lot of screwed up corrections, too, though, as you're probably aware, at least. Right. And absolutely there should not be a disincentive to publish corrections. And many courts have said that. The reason why this particular clarification does not fall within the zone of protection of that rule is because it compounded the original defamation and reflected no additional scrutiny of the petition or of any other documents. It merely put the original defamation to the passive voice, which doesn't show necessarily the kind of good faith effort and commitment to. But it also doesn't show malice, necessarily, on the flip side of that. I mean, it does, it shows sloppiness, grudging. I mean, most, at least going outside the record, a lot of corrections are grudging corrections that barely correct the original mistake in the reporting and do not seem to even acknowledge the mistake in the original reporting. But that kind of sloppiness, grudging behavior is still not malice, it doesn't seem to me. Well, the evidence pointing toward an honest, good faith mistake, as you indicated earlier in your questioning, is the testimony submitted by B&A's employees, the affidavits. Now, this Court and other courts have said that, on summary judgment, a court may disbelieve the self-interested testimony of the employees of a defendant liable publisher because a jury may do so. And the question of credibility is a quintessential task for the fact finder, as the Supreme Court recognized in Proxmire, and as it recognizes well in Anderson. So it is correct that we do have the defendant's testimony that it merely made a good faith mistake, it was sloppy, as you've said, but the record of evidence does not compel that finding. We would submit, especially in light of the acknowledgement that a clarification was needed. What's your best case for kind of two sloppy mistakes equals recklessness? It's hard to think of a case that involves the exact same fact pattern as this case, but there are authorities that we saw in our briefs, including SACIM defamation, that say that a retraction demand that is ignored or that republication of a falsehood does tend to support actual amounts. And the reason for that is because it is more unlikely with the second publication that the good faith explanation for the first publication applies to the second publication. But with respect to your question about the particular case, I would direct the court to Curtis Publishing v. Butts, which is a case that involves facts that are somewhat similar to this case. As both the majority opinion or the main opinion and Chief Justice Warren's opinion point out, the defendant was notified that the account was not correct before publication. I believe it involved only a single publication, but it was similar insofar as the denial was proffered and then ignored. The other case that supports us on that particular ground, the ground of ignoring an easily obtainable source of evidence that would corroborate the initial publication, is Hart-Hanks. In that case, the court emphasized that it would have been easy to listen to certain tapes to verify or disprove the interpretation advanced by the publisher. And other cases have stressed that where there is reason for doubt, a court may look at the extent to which corroborating the interpretation would have been easy with respect to documentary evidence. So under that precedent, we think it's strongest for summary judgment to allow this case to proceed. Once BNA acknowledged that the first article was not sufficiently clear, precise, accurate, it was then BNA's obligation to do something to verify the publication if the court doesn't have any further questions. All right. Thank you. Your Honors, I'll just address a few points. I agree with much of what was said. BNA did not concede that they had made a mistake. What they said was, and this is at the appendix at 255, that they disagreed with the characterization of Plaintiff's Counsel, Van Kaal's Counsel, and yes, it could be confusing, and therefore, they were going to run a clarification. And obviously, just to address the point that he had raised, and importantly, if he did have the transcript, the lawyer, he didn't seek to provide it or attach it to his letter. And as I said, he made no reference to the petition. He made no reference to the AUSA speaking. He made no reference to the four corners of the judge's ruling. So we don't think that we were on notice to go out and try and get the transcript, as Your Honor says, not necessarily that easy in the days before Pacer, et cetera. And the clarification – But no one tried. No one tried. But we were told he didn't say it. We corrected that. There would be no reason to make the effort, as Your Honor was saying. These kinds of mistakes are every day. I mean, that's what the 39 amici, media amici, were trying to say is, yeah, this comes up all the time. Is that a good thing or a bad thing? It's a fact of life. It's what the New York Times, V. Sullivan, recognized. Erroneous statement is inevitable, is exactly what the court said. And Time, Inc. v. Pape said we need a zone of protection for errors of fact, even if negligent, or errors of misinterpretation. It's just a fact of life, ever more so in the 24-7 news environment that we live in. So it would be a revolution. In this era of fake news, maybe we should revisit our thinking on this. Well, this was a mistake. This is a good example of where it's not fabrication. Which would be suggestive of actual malice here. These statements were indeed made at the sentencing hearing. This wasn't just totally made up. It was based on the petition itself. No reason to doubt the source of the document. But fake news could be attributing a statement to the wrong person as well. You know, that could happen. But fake news suggests very deliberate effort here. But how do you know? Well, there's been no evidence of that here. And I think Judge Roberts pointed out, I mean, this is not a situation where, you know, there's any evidence they were out to get Mr. Call that this would increase circulation if they put in, you know, this language that was in the appendix. They didn't make that up. It was right in the appendix. They're describing the appendix. They got wrong exactly who said it. But in this case, there's not an effort to fictionalize or fabricate. And there would be no motive for it. This is, you know, as clean a record as you could possibly find, I think, for an inadvertent mistake. And I would say one more point, that the second letter that Mr. Von Call himself pointed and sent was, of course, after the clarification was published, more than two and a half years after the original summary. McFarland tells us we have no obligation to run a correction. Failure to run a correction is not evidence of actual malice. We went the extra mile in doing the clarification. But there is not evidence of actual malice if you fail to. That is from the McFarland case. And that passive voice that the BNA adopted for the clarification, that's sort of typical of these very dry-as-dust summaries. They don't go through chapter and verse on who said what at the hearing. And that's not in this very brief squibs that these are. If the Court has any further questions. If not, I'll rest. Thank you. We'll take the case under advisement. Oh, yes. Counsel for Amicus. Excuse me. My colleague reminds me, and I apologize, we want to thank you for the able assistance you have provided to the Court. Thank you, Your Honor.
judges: Rogers, Kavanaugh, Wilkins